752

[No. 32702-3-II.    Division Two.    July 5, 2006.]

*In the Matter of the Personal Restraint of* Donald T. McCarthy, *Petitioner.*

*Richard A. Linn* (of *Law Office of Richard Linn, P.L.L.C.*), for petitioner.

*Robert M. McKenna, Attorney General,* and *Gregory J. Rosen, Assistant,* and *Arthur D. Curtis, Prosecuting Attorney,* and *Michael C. Kinnie, Deputy,* for respondent.

¶1 ARMSTRONG, J. — Donald T. McCarthy seeks relief from unlawful restraint following his 2002 guilty plea to a charge of third degree assault with sexual motivation. He claims that his restraint is unlawful because the Indeterminate Sentence Review Board (ISRB) increased his minimum term of confinement without having a jury make the necessary factual determinations and without allowing him legal representation. He also claims that he was ineligible

for an indeterminate sentence because he did not commit and has not committed an enumerated predicate offense. His first and third claims fail, but we remand to the ISRB to consider his request for legal representation.

FACTS

¶2 McCarthy pleaded guilty on July 25, 2002. On December 4, 2002, the superior court imposed a stipulated exceptional sentence of one year and one day with a maximum term of 60 months.

¶3 On August 5, 2003, the ISRB held an RCW 9.95-.420(3) release hearing (.420 hearing). McCarthy requested that an attorney represent him, but the ISRB denied his request, reasoning that the Department of Corrections's (Department) policy prohibited representation. The ISRB found that McCarthy needed sex offender treatment, added 24 months to his minimum term, and concluded: "[U]nless he has some sex offender treatment in order to learn about his deviant desires and behaviors he would constitute an ongoing danger to the community, especially young, vulnerable, or mentally disabled people." Ex. 3, at 3.

¶4 McCarthy was under the care of Mr. Merkner, who explained that McCarthy's referral was because he is "extremely fearful, anxious and paranoid. History of paranoid schizophrenia." Ex. 4, at 4. He explained that McCarthy's resultant medications are diazepam (an antianxiety medication), risperidone (an antipsychotic medication), and celexa (an antidepressant medication). McCarthy was on medications during the hearing.

¶5 On September 8, 2004, the ISRB again conducted a .420 hearing. Again, McCarthy requested counsel and again the ISRB denied his request. It then again found by a preponderance of the evidence that McCarthy presented a significant risk and was more likely than not to reoffend sexually if released to the community. It then added the remaining 23 months and 26 days to his minimum term. The ISRB reasoned:

Mr. McCarthy has a significant history of frottage with vulnerable victims, either young, very old women, or with developmental difficulties. He maintains a highly anxious appearance, needs medications, and this suggests that he reacts to stress by participating in this sort of behavior. He is making satisfactory progress in the SOTP [sex offender treatment program] and he is behaving himself well in the institution. There is an underlying concern about his chemical abuse in the past and he may require intensive outpatient treatment, but Mr. McCarthy has at least some minor mental health problems and focusing on one program at a time seems to be the appropriate step[ ].

Ex. 9, at 3.

DISCUSSION

I. EXCEPTIONAL SENTENCE

¶6 McCarthy first claims that when the ISRB increased his minimum term sentence following his .420 hearings, it violated his Sixth Amendment right to a jury trial. Citing *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), he claims that his restraint is unlawful because the ISRB imposed an exceptional sentence without giving him an opportunity to have a jury decide, beyond a reasonable doubt, the facts supporting such a sentence.

¶7 Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the *Blakely* Court held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Blakely*, 542 U.S. at 301. Thus, if a sentencing court imposes a sentence based on facts beyond those found by the jury beyond a reasonable doubt, it violates the Sixth Amendment and imposes an invalid sentence. *Blakely*, 542 U.S. at 305.

¶8 The ISRB increased McCarthy's minimum term of confinement by 24 months following his 2003 .420 hearing

and 23 months and 26 days following his 2004 hearing. In doing so, it relied on documentation from McCarthy's prison files, testimony presented during the hearing, and the ISRB's discussions with McCarthy. Thus, McCarthy argues, it increased the penalty for his crime beyond the prescribed statutory maximum without submitting the supporting facts to a jury to be proved beyond a reasonable doubt, violating his jury trial right.

¶9 The Department argues that *Blakely* does not apply because, unlike Blakely, McCarthy was sentenced under an indeterminate sentencing scheme. We agree. In *State v. Clarke*, 156 Wn.2d 880, 134 P.3d 188 (2006), our Supreme Court addressed this very issue and held that *Blakely* does not apply to an exceptional minimum sentence imposed under RCW 9.94A.712 because the statutory maximum sentence under that provision is mandatory, not the outside limit of available sentences. *Clarke*, 156 Wn.2d at 886.

¶10 Under this reasoning, the statutory maximum that McCarthy may serve is 60 months imprisonment. Since McCarthy has no right to a lesser sentence than his maximum, judicial fact-finding was not required before the ISRB could increase McCarthy's minimum term. *Clarke*, 156 Wn.2d at 886.

## II. REPRESENTATION AT .420 HEARING

¶11 McCarthy next contends that the ISRB denied him his due process rights when it denied him representation at the .420 hearing, both in 2003 and again in 2004. His argument is twofold. First, he argues that a .420 hearing is comparable to a parole or probation revocation hearing, thus invoking due process protections. And second, he argues that the ISRB should have granted his request for counsel because he was not mentally competent to present his case to the ISRB.

¶12 Due process applies in parole revocation proceedings because there is the possibility of the deprivation

of liberty. *See Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). While there is no right to representation, the need for counsel at such proceedings needs to be addressed on a case-by-case basis. *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) (need for counsel must be determined on a case-by-case basis). *See also Arment v. Henry*, 98 Wn.2d 775, 779, 658 P.2d 663 (1983) (" 'A prisoner thought to be suffering from a mental disease or defect requiring involuntary treatment probably has an even greater need for legal assistance, for such a prisoner is more likely to be unable to understand or exercise his rights. In these circumstances, it is appropriate that counsel be provided to indigent prisoners whom the State seeks to treat as mentally ill.' " (quoting *Vitek v. Jones*, 445 U.S. 480, 496-97, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980))).

¶13 McCarthy claims that a .420 hearing is similar to a parole revocation hearing because it may result in lost liberty, applies the same legal standard, involves similar technical arguments, and is rehabilitative.

¶14 In *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), inmates sought greater due process protections because of an expectation of release in parole release decisions. They reasoned, in part, that the statute created an expectation that they would be released. Similar to that at issue here, the governing Nebraska statute provided:

"Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall order his release unless* it is of the opinion that his release should be deferred because:

"(a) There is a substantial risk that he will not conform to the conditions of parole;

"(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

"(c) His release would have a substantially adverse effect on institutional discipline; or

"(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date."

*Greenholtz*, 442 U.S. at 11 (emphasis added) (quoting former NEB. REV. STAT. § 83-1,114(1) (1969)).

¶15 The court then noted:

We can accept respondents' view that the expectancy of release provided in this statute is entitled to some measure of constitutional protection. However, we emphasize that this statute has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis.

*Greenholtz*, 442 U.S. at 12. The court then considered what process was due to an inmate and concluded:

The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more.

*Greenholtz*, 442 U.S. at 16.

¶16 Similar to the inmates in *Greenholtz*, McCarthy argues that RCW 9.95.420(3) creates an "expectancy of release" and thus that he has a due process right. That statute provides: "The board *shall order the defendant released*, under such affirmative and other conditions as the board determines appropriate, *unless* the board determines by a preponderance of the evidence that, despite such condition, it is more likely than not that the offender will commit sex offenses if released." RCW 9.95.420(3) (emphasis added).

¶17 Because the statute affirmatively places the burden of proving the need for further confinement on the ISRB, McCarthy argues that he should have the same rights afforded to parolees. Additionally, he argues, the .420 hearing shares the same rehabilitative goal as probation and parole. For example, if the ISRB determines that an inmate

is not ready for release, it can order further treatment to help rehabilitate the offender. And, considering that the ISRB's decision will rest on the offender's history, which can be lengthy and complicated and will undoubtedly involve medical and treatment reports, most offenders lack the skills needed to effectively advocate their own case.

¶18 While we agree with the ISRB that RCW 9.95.420 has a primary interest in protecting the public from high-risk sex offenders, it also has a rehabilitative component. *See* 2001 FINAL LEGISLATIVE REPORT, Third Engrossed Substitute S.B. 6151, 56th Wash. Leg., 2d Spec. Sess. at 233 (because of risks sex offenders pose, comprehensive approach, both civil and criminal, is needed). This rehabilitative component is patently obvious here, where the ISRB concluded that McCarthy needed more time institutionalized in order to complete the sex ofender treatment program, to obtain treatment for his chemical abuse, and to focus, one program at a time, on his mental health problems.

¶19 Considering all of this, McCarthy argues that the ISRB acted in an arbitrary and capricious manner in denying his requests for counsel. At the very least, he argues, the ISRB should have made an individualized decision, especially considering his lengthy history of mental illness, his age, his limited IQ (intelligence quotient), his lack of education, and his lack of necessary skills to rebut or even competently present his case. His, he argues, is one of the "doubtful cases" discussed in *Scarpelli* where the inability to effectively speak for himself should have caused the ISRB to appoint counsel. We agree. As the *Scarpelli* Court explained:

> We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both

undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

*Scarpelli*, 411 U.S. at 790. Here, the ISRB did not give McCarthy any opportunity to explain his need for appointed counsel and the ISRB simply ruled that petitioner had no such right under the Department's policy. It is clear to us (1) a .420 hearing implicates due process, (2) there are cases where counsel should be appointed, and (3) the ISRB should have exercised its discretion before denying McCarthy's requests. While the presence of counsel may disrupt the informal nature of these proceedings, this consideration is less important than the need for a fundamentally fair proceeding. As such, this matter is remanded to the ISRB to exercise its discretion and, if necessary, to provide McCarthy with a new hearing should it find that counsel was necessary.

### III. Sentencing Eligibility

¶20 McCarthy argues that he was ineligible for an indeterminate sentence because neither his current offense nor his prior offense is in the enumerated list of prerequisite offenses. RCW 9.94A.712, which defines eligibility for the indeterminate sentencing scheme, provides, in part:

(1) An offender who is not a persistent offender shall be sentenced under this section if the offender:

(a) Is convicted of:

(i) Rape in the first degree, rape in the second degree, rape of a child in the first degree, child molestation in the first degree, rape of a child in the second degree, or indecent liberties by forcible compulsion;

(ii) Any of the following offenses with a finding of sexual motivation: Murder in the first degree, murder in the second degree, homicide by abuse, kidnapping in the first degree, kidnapping in the second degree, assault in the first degree,

assault in the second degree, assault of a child in the first degree, or burglary in the first degree; or

(iii) An attempt to commit any crime listed in this subsection (1)(a);

committed on or after September 1, 2001; or

(b) Has a prior conviction for an offense listed in RCW 9.94A.030(32)(b), and is convicted of any sex offense which was committed after September 1, 2001.

For purposes of this subsection (1)(b), failure to register is not a sex offense.

¶21 Petitioner's current offense, third degree assault with sexual motivation, is not an offense enumerated in RCW 9.94A.712(1)(a). Thus, to qualify under subsection (1)(b) of this statute, his prior offense must be one of those enumerated in former RCW 9.94A.030(32)(b) (2002), which provides:

(32) "Persistent offender" is an offender who:

. . . .

(b)(i) Has been convicted of: (A) Rape in the first degree, rape of a child in the first degree, child molestation in the first degree, rape in the second degree, rape of a child in the second degree, or indecent liberties by forcible compulsion; (B) any of the following offenses with a finding of sexual motivation: Murder in the first degree, murder in the second degree, homicide by abuse, kidnapping in the first degree, kidnapping in the second degree, assault in the first degree, assault in the second degree, assault of a child in the first degree, or burglary in the first degree; or (C) an attempt to commit any crime listed in this subsection (32)(b)(i); and

(ii) Has, before the commission of the offense under (b)(i) of this subsection, been convicted as an offender on at least one occasion, whether in this state or elsewhere, of an offense listed in (b)(i) of this subsection or any federal or out-of-state offense or offense under prior Washington law that is comparable to the offenses listed in (b)(i) of this subsection. A conviction for rape of a child in the first degree constitutes a conviction under (b)(i) of this subsection only when the offender was sixteen years of age or older when the offender committed the offense.

A conviction for rape of a child in the second degree constitutes a conviction under (b)(i) of this subsection only when the offender was eighteen years of age or older when the offender committed the offense.

¶22 Petitioner's prior sex offense is a 1992 Oregon conviction of sex abuse I. That offense, defined in Oregon Revised Statutes § 163.427, provides:

(1) A person commits the crime of sexual abuse in the first degree when that person:

(a) Subjects another person to sexual contact and:

(A) *The victim is less than 14 years of age*;

(B) The victim is subjected to forcible compulsion by the actor; or

(C) The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless; or

(b) Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person.

(2) Sexual abuse in the first degree is a Class B felony.

(Emphasis added.)

¶23 We apply a three-part test when deciding how to characterize an out-of-state conviction under Washington law during sentencing. First, we convert the out-of-state crime into its Washington counterpart. Second, we determine the sentencing consequences of the Washington counterpart. And third, we assign those consequences to the out-of-state conviction. *State v. Russell*, 104 Wn. App. 422, 440, 16 P.3d 664 (2001) (citing *State v. Berry*, 141 Wn.2d 121, 130-31, 5 P.3d 658 (2000)).

¶24 The Washington counterpart to this Oregon offense is first degree child molestation, which is defined in RCW 9A.44.083:

(1) A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is *less than twelve years old* and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

(2) Child molestation in the first degree is a class A felony.

(Emphasis added.)

¶25 Because Washington's offense of first degree child molestation requires that the victim be less than 12 years old and because the record did not show the Oregon victim's age, we remanded this petition for a reference hearing under RAP 16.12. After taking further evidence, the superior court found that the Oregon victim was less than 12 years old at the time of the offense. Thus, McCarthy's Oregon offense was equivalent to Washington's offense of first degree child molestation. Because it is an offense enumerated in former RCW 9.94A.030(32)(b), one consequence of this offense is that it serves as a predicate offense under RCW 9.94A.712(1)(b). There was no error in finding that he is a persistent offender.

¶26 Affirmed in part and remanded in part.

HOUGHTON and BRIDGEWATER, JJ., concur.