# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>DONALD BETTS | No. 85906-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Donald Betts filed a personal restraint petition (PRP) challenging a decision of the Indeterminate Sentence Review Board (ISRB) denying conditional release and adding 36 months to his minimum term of sentencing. Betts asserts that the ISRB erred by altering its decision after receiving the results of a sexually violent predator evaluation and by denying him access to his counsel. We hold the ISRB did not abuse its discretion by amending its decision after conducting a hearing on new evidence. Accordingly, we deny Betts's petition.

I

A jury convicted Betts of two counts of rape in the second degree and one count of burglary in the first degree. In 2009, the trial court imposed concurrent indeterminate sentences of 194 months to life for each rape conviction.[1] The Department of Corrections (DOC) calculated Betts's minimum term of confinement to expire on November 25, 2018. In re Pers. Restraint of Betts, 21 Wn. App. 2d 173, 174, 505 P.3d 148 (2022).

---

[1] The sentence was amended in 2010 to change the length of time imposed on the burglary count.

In 2018, the ISRB determined after a hearing that Betts was not releasable and added 48 months to the term of his sentence. The ISRB conducted another hearing in 2022. In April 2022, the ISRB found that Betts was releasable to community custody and directed him to submit an Offender Release Plan (ORP) for consideration. Betts's ORP was rejected after the ISRB found that Betts and his sponsor had not been honest about how they knew each other and that the sponsor did not understand the risk Betts posed to her.

In June 2022, at the request of the Office of the Attorney General, a forensic examiner conducted a psychiatric evaluation of Betts to determine whether he met the criteria for a sexually violent predator. The examiner issued a report in which he concluded that Betts met the statutory definition of a sexually violent predator. The 45 page report included expert opinion evidence concerning Betts's likelihood of reoffending that was new since the ISRB's April 2022 decision, including the opinion that his risk of reoffending is "roughly twice the rate of the average individual convicted of a sexually motivated offense." After receiving the report, the ISRB conducted another hearing.[2] Following the hearing, the ISRB determined that Betts was not releasable and added 36 months to his minimum term of confinement.

Betts subsequently filed a personal restraint petition in this court challenging the decision of the ISRB.

---

[2] The record is not clear on whether Betts's attorney attended the second hearing.

II

To obtain relief, Betts must show he is restrained under RAP 16.4(b) and that his restraint is unlawful under RAP 16.4(c). In re Pers. Restraint of Lain, 179 Wn.2d 1, 10, 315 P.3d 455 (2013). As the petitioner has no alternative means to challenge a decision of the ISRB, the threshold requirements of " 'actual and substantial prejudice' " do not apply to claims that the ISRB violated its own procedures. In re Pers. Restraint of Mines, 146 Wn.2d 279, 286, 45 P.3d 535 (2002) (internal quotation marks omitted) (quoting In re Pers. Restraint of Cashaw, 123 Wn.2d 138, 148, 866 P.2d 8 (1994)).

A

Betts first asserts the ISRB abused its discretion by altering its decision after it found him releasable. "An abuse of discretion may be found where the ISRB fails to follow its own procedural rules for parolability hearings or where the ISRB bases its decision on speculation and conjecture only." In re Pers. Restraint of Dyer, 175 Wn.2d 186, 196, 283 P.3d 1103 (2012). Betts does not assert that the ISRB based its decision on speculation and conjecture; rather, he challenges the ISRB's decision solely on procedural grounds.

Betts argues that the ISRB's rules do not permit it to vacate its decision and enter a new one. The rules he asserts the ISRB failed to follow are WAC 381-30-100 and 381-60-170. Neither of these rules apply to Betts. Because Betts is serving a sentence for a sex offense, his parolability determination is governed by RCW 9.95.420 and chapter 381-90 WAC, not by chapters 381-30 or 381-60 WAC.

Neither RCW 9.95.420 nor chapter 381-90 WAC states that a decision of the ISRB cannot be modified once entered.

Betts also invokes a due process liberty interest in parole. RCW 9.95.420(3) "creates a limited liberty interest by restricting the Board's discretion and establishing a presumption that offenders will be released to community custody upon the expiration of their minimum sentence." In re Pers. Restraint of McCarthy, 161 Wn.2d 234, 241, 164 P.3d 1283 (2007). This limited liberty interest does not entitle the offender to a formal, adversarial hearing. Id. at 242. Rather, an offender at the parolability determination stage is entitled to only the minimum process of an opportunity to be heard and an explanation when release is denied.[3] Id.

After the ISRB received a copy of the new psychiatric evaluation, it scheduled a second hearing so that Betts could be heard concerning the new evidence. Following the second hearing, the ISRB provided Betts with its written decision explaining why it was extending the minimum term of his sentence. Thus, Betts received all of the process that was due to him.

B

Betts additionally asserts that the ISRB deprived him of his right to counsel at the second hearing. Betts contends that he had a procedural due process right

---

[3] Betts also argues that his interest in release entitles him to have the ISRB's first decision reinstated. Even if we agreed with Betts that the ISRB committed a procedural error, the remedy for such an error is a new hearing that comports with due process, not a particular substantive outcome. In re Pers. Restraint of Shepard, 127 Wn.2d 185, 192, 898 P.2d 828 (1995). Thus, Betts would not be entitled to the relief he seeks regardless of any error.

to have his retained counsel appear at the parolability hearing on his behalf. We disagree.

All of the authority Betts cites in support of his argument concerns the rights of offenders subject to parole revocation hearings. Offenders subject to revocation hearings have a greater liberty interest in their freedom and are therefore entitled to greater process than those who have not yet been released to community custody. See Lain, 179 Wn.2d at 18. Neither of the hearings conducted by the ISRB in this matter constituted parole revocation hearings and accordingly, Betts was not entitled to anything more than minimal due process.

Lain demonstrates why this is so. In Lain, the ISRB determined that the offender was parolable. 179 Wn.2d at 9. Following this determination, the offender submitted an ORP, which the ISRB approved. Id. Shortly before the scheduled release date, the governor canceled the offender's parole and ordered the DOC to not release him. Id. at 10. The offender asserted that the governor's decision was equivalent to a revocation and that he was entitled to the same process due in parole revocation hearings. Id. at 18.

The Supreme Court rejected this argument. Id. In determining what process was due to the offender, the court analyzed the three factors articulated in Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Lain, 179 Wn.2d at 18-20. These are: the individual's interest, the value of specific procedural safeguards in protecting against erroneous deprivation of that interest, and the State's interest. Id. at 17. On the first factor, the court held that an offender who had not yet been released had a more minimal liberty interest

5

than that of a parolee already released on community custody. Id. at 18. As the court noted,

> Unlike for a parolee, who "may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation," the deprivation of expected parole for an inmate who is still incarcerated does not "then and there work any change in the conditions of his liberty."

Id. at 19 (internal citations omitted) (quoting Morrissey v. Brewer, 408 U.S. 471,482, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

On the second factor, the court held that a hearing before the governor would not have any additional value because the offender had an opportunity and incentive to present his case to the ISRB. Id. at 19. "That hearing," before the ISRB, "and the governor's limited review helped assure that the governor's discretionary decision was based on verified facts and informed by accurate knowledge of [the offender's] behavior, minimizing the risk that a determination about parolability was arbitrary and capricious." Id.

On the third factor, the court held that "[t]he State has an overwhelming interest in protecting public safety and preventing an unrehabilitated prisoner from being released on parole," that did not justify the burden of conducting a hearing before the governor. Id. at 20. The court concluded that "[g]iven an inmate's limited liberty interest under the circumstances, the nature of the governor's evaluation process, and the State's substantial interest in public safety, due process did not require the governor to hold a second parolability hearing." Id.

Betts's argument that he had a due process right to the assistance of counsel fails for similar reasons. Like the offender in Lain, Betts had not yet been

6

released at the time of the ISRB's amended decision. Furthermore, unlike the offender in Lain, Betts did not have an approved ORP in place. Accordingly, Betts's liberty interest at stake was minimal, even more so than in Lain.

After the ISRB received a copy of the forensic sexually violent predator evaluation, it scheduled another hearing to determine Betts's parolability. Betts asserts that this was not enough and that his attorney should have been allowed to participate. For this assertion, Betts relies on Grigsby v. Herzog, 190 Wn. App. 786, 362 P.3d 763 (2015). However, Grigsby did not address whether an offender has a due process right to retained counsel of choice in either a revocation or parolability hearing. To the contrary, the court in Grigsby explicitly declined to reach the issue as it had not been briefed by the parties. Id. at 814. Furthermore, Grigsby concerned the process due in revocation hearings, not parolability determinations. Id. at 811.

Our Supreme Court has previously rejected a similar argument. In McCarthy, the Supreme Court held that the Court of Appeals had erred by applying a case-by-case approach to the right to counsel in hearings conducted under RCW 9.95.420. 161 Wn.2d at 244. RCW 9.95.420 concerns the release of offenders, not the revocation of parole. Id. As the court explained, offenders who have not yet been released have a lesser liberty interest at stake and are entitled to only a minimum amount of process. Id. at 245. That minimum process does not include the right to counsel. Id. at 245 (citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 12, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)).

7

As explained in subsection A, <u>supra</u>, the only process due to an offender at a parolability hearing is the opportunity to be heard and an explanation when release is denied.  <u>McCarthy</u>, 161 Wn.2d at 242; <u>see also</u> <u>Lain</u>, 179 Wn.2d at 20. Betts received all the process that was due to him.  As such, he has not demonstrated that he is under any unlawful restraint.  We deny the petition.

Birk, J.

WE CONCUR:

Coburn, J.          Hazelrigg, ACJ