# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of<br><br>JAMES LEE WALTERS,<br><br>               Petitioner. | No. 54062-2-II<br><br>UNPUBLISHED OPINION |

WORSWICK, J. — James L. Walters, an inmate serving an indeterminate sentence, petitions for release from restraint arguing that the Indeterminate Sentence Review Board (ISRB) erroneously denied his release. Walters was convicted in 2008 of kidnapping in the first degree with sexual motivation and indecent liberties with forcible compulsion.

Walters filed this personal restraint petition (PRP) after the third ISRB decision.[1] He argues that the ISRB violated his procedural due process rights by relying on acquitted conduct, namely conduct constituting a crime for which he was acquitted in 1983, in its decision to deny release. Walters also argues that the ISRB violated his due process rights by treating the acquitted conduct as conclusively proven, that ISRB's determination was not supported by sufficient evidence, and that considering the acquitted conduct was an abuse of discretion.

We hold that the ISRB did not violate Walters's due process rights by relying on the acquitted conduct at issue here, sufficient evidence supports the ISRB determination, and the

---

[1] At oral argument, Walters explained that the ISRB had again denied Walters release at a hearing that occurred while this appeal was pending. Walters questioned whether this case was moot, but expressed a desire to present arguments on the merits. Counsel for the ISRB agreed to proceed with arguments on the merits, regardless of the most recent denial.

No. 54062-2-II

ISRB did not abuse its discretion by considering the acquitted conduct. Accordingly, we deny Walters's petition.

FACTS

James L. Walters was convicted in 2008 of kidnapping in the first degree with sexual motivation and indecent liberties with forcible compulsion. Walters was 40 years old at the time of the crime. The victim, a 12-year-old girl, was a person Walters knew. The judge sentenced Walters to an indeterminate sentence with a minimum term of 68 months and a maximum of life.

Walters filed a direct appeal to this court in 2008. *State v. Walters*, No. 64967-1-I, (Wash. Ct. App. November 11, 2008). We affirmed Walters's conviction. *See State v. Walters*, noted at 156 Wn. App. 1026, 2010 WL 2283570, at *5 (unpublished) (*Walters* I). Our Supreme Court denied his petition for review. *State v. Walters*, 171 Wn.2d 1016, 253 P.3d 392 (Table) (2011).

Since then, the ISRB has held hearings under RCW 9.95.420 (.420 hearing) regarding Walters's release. Each time, the ISRB denied release. The history of these proceedings is helpful in understanding both the ISRB decision at issue here and Walters's petition.

Walters's first .420 hearing was in 2013. At that hearing, Walters denied that he had committed a sex offense and at the time had not undergone any sex offender treatment. Because Walters had an earlier PRP pending at the time of this first .420 hearing, he chose not to fully participate in the .420 hearing or in the sex offender treatment and assessment program (SOTAP).[2] In its decision and reasons for denying Walters's release in the 2013 .420 hearing,

---

[2] In March 2012, Walters filed a PRP in Division One of this court. The PRP was transferred to this court and final disposition of that PRP was pending at the time of the 2013 .420 hearing.

the ISRB stated that it relied in part on a 2013 report from the End of Sentence Review

Committee (ESRC).[3]

In its 2013 report, the ESRC determined that Walters was a "moderate/low" and "low"

risk, respectively, in two actuarial assessments of risk to reoffend. However, the ESRC

determined Walters was a Level III sex offender risk for community notification, based on

aggravating factors of past interventions not deterring sexually deviant behavior, and

"[d]ocumented information that increases risk for sexual re-offense," that included a description

of the 1983 charges, as well as his psychological history and treatment. Level III is the highest

risk level.

The ESRC based this risk level, in part, on 1983 charges for which Walters was

acquitted, plus a recommendation from the sexually violent predator (SVP) subcommittee that

Walters be psychologically evaluated for post-confinement civil commitment as a sexually

violent predator under RCW 71.09.020.[4] In 1983, Walters was charged with first degree rape

and first degree burglary. He was 17 years old at the time. The victim in that case was the 15-

year-old sister of one of Walters's friends. Walters's friend had told Walters that the victim

would be home from school that day. Walters had access to the victim's house because he knew

---

[3] The ESRC was established to assign risk levels, review release plans, and make appropriate referrals for sex offenders. RCW 72.09.345(2). Prior to potential release, the ESRC reviews each sex offender and classifies them into a risk level for public notification, reviews proposed release plans, and makes referrals. RCW 72.09.345(5). "The [ESRC] shall classify at risk level III those offenders whose risk assessments indicate they are at a high risk to sexually reoffend within the community at large." RCW 72.09.345(6). It assesses public risk posed by sex offenders on a case-by-case basis. RCW 72.09.345(3)(a). The ESRC has access to public agency records relating to the offender under review. RCW 72.09.345(4).

[4] The document described in the ESRC report is a "Motion to Introduce Evidence" filed in the index case, but seeking to admit evidence of the 1983 conduct. Response of ISRB (Ex. 6 at 3).

where the key was and had used it to access the house to pick up his friend on the morning of the attack. The victim's family also had two dogs, which did not react to the intruder. The victim described the assailant was a white teen male. A state crime lab examined semen recovered from the victim and determined Walters had the same blood type as the assailant. Walters also participated in a polygraph examination, the results of which noted deceptive responses.

The ISRB did not grant Walters's release after the 2013 .420 hearing, so it added 36 months to Walters's minimum term as provided in RCW 9.95.011 and .420(3)(a). As explained in its decision and reasons for denying release, the ISRB based its decision on his Department of Corrections (DOC) and ISRB files. These files included the ESRC report—which contained information on his 1983 charges, Walters's level III risk, and "information regarding institutional behavior and programming." Response of ISRB (Ex. 3 at 4-5). The decision and reasons listed Walters's risk level, his referral to the SVP subcommittee, and his lack of participation in SOTAP and other mitigation programs or treatment.

Walters's second .420 hearing was in April 2016. At that time, Walters had begun SOTAP and provided a statement to the ISRB. According to the ISRB's report, Walters's description of his current offense had "some elements that were consistent with file material and others that were not." Response of ISRB (Ex. 4 at 6). Walters had made inconsistent statements about planning the crime and thoughts of hurting the victim: he stated in a disclosure to ISRB that he had planned for approximately one month to rape the victim, but he also stated he had not planned the attack and that there was no sexual element or motivation to his crime. The ISRB also relied on the 2013 ESRC report again. In its decisions and reasons for denying release, the

ISRB included information describing Walters's acquitted conduct. The ISRB again denied Walters's release and set a new minimum release date 36 months in the future.

Walters appealed the ISRB's 2016 decision to this court in a PRP. *In re Pers. Restraint of Walters*, No. 46370-9-II, (Wash. Ct. App. Mar. 15, 2016) (unpublished) (*Walters* II), http://www.courts.wa.gov/opinions/pdf/D2%2046370-9-II%20Unpublished%20Opinion.pdf. There, Walters argued, among other things, that the ISRB abused its discretion by considering evidence of the prior acquitted conduct. *Walters* II, slip op. at 5. We denied Walters's petition, holding that the ISRB did not abuse its discretion in considering the ESRC level classification, "[n]or did the ISRB abuse its discretion in considering the evidence the ESRC relied on when making its classification. This information was relevant to the ISRB's ultimate decision, i.e.[,] whether Walters should be released into the community." *Walters* II, slip op. at 9-10. We did not reach—and Walters did not argue—whether the ISRB's consideration of acquitted conduct was itself a due process violation.

Walters's third .420 hearing—the one at issue here—occurred in December 2017. Prior to this hearing, the ESRC again reviewed Walters's case. The ESRC actuarial assessments, although still "low" and "low/moderate," were raised slightly because Walters had incurred an infraction for possessing a weapon. Response of ISRB (Ex. 7 at 1). The ESRC continued to list Walters at a Level III community notification risk. The ESRC based this determination in part on "documented information that increases risk for sexual re-offense," including the 1983 charges. Response of ISRB (Ex. 7 at 1, 6). The ESRC again recommended that Walters be reviewed for civil commitment by the SVP subcommittee if the ISRB were to recommend release.

5

By the 2017 .420 hearing, Walters had completed SOTAP and other programs. He also provided a statement to the ISRB. He denied any involvement in the 1983 crime but did not present any evidence on the matter. The ISRB again noted that Walters's description of his offense had some elements that were consistent with the file material and others that were not. Whereas previously Walters had stated he premeditated the assault for a month, he stated at the 2017 hearing that he had considered it for a year. He also stated that his motivation was primarily revenge against the victim's father and anger at the victim, but was not sexual. When the ISRB asked Walters about the SOTAP discharge summary in which Walters stated he thought about raping the victim for two months, Walters denied making the comment. Walters admitted to SOTAP counselors that the crime had a sexual element, but maintained at the hearing that sex was not a motivating factor. Walters told the counselors that the victim's lack of struggle probably saved her from further rape or injury. However, Walters told the ISRB that anger at the victim and the victim's father was his primary motivator and the primary factor in his premeditation.

The ISRB denied Walters release and added 36 months to his minimum term. In its decisions and reasons, the ISRB conducted a review of all information in Walters's DOC and ISRB files. The ISRB relied on the ESRC report, a history of Walters's charges, information from the DOC, information from institutional behavior programming, a presentence investigation report filed in the index case, and the testimony of Walters and his counselors. In its reasons for denying release, the ISRB listed that Walters was a Level III notification risk, that the ESRC had referred Walters to the SVP subcommittee, and that Walters was inconsistent in describing the crime. The ISRB found Walters's explanations of his motivation for the crime not credible, and

6

noted that Walters continued to minimize the sexual elements of the crime. In the two paragraphs the ISRB dedicated to its reasoning, it included only one sentence on Walters's acquitted conduct: "The [ISRB] continues to be concerned that Mr. Walters has a prior allegation/arrest/charge that has similar characteristics to his index offense." Response of ISRB (Ex. 5 at 8).

Walters filed this PRP to appeal the ISRB's release denial at the 2017 .420 hearing.

ANALYSIS

"To succeed on a PRP, the petitioner must prove unlawful restraint." *In re Pers. Restraint of Dyer*, 175 Wn.2d 186, 195, 283 P.3d 1103 (2012) (*Dyer* III). Restraint is unlawful when "the sentence or other order entered . . . was imposed or entered in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(2).

The ISRB examines sex offenders to predict sexual dangerousness and the probability that the offender will reoffend if released. RCW 9.95.420(1)(a). The ISRB orders offenders released unless it determines by a preponderance of the evidence that it is more likely than not that the offender will reoffend. RCW 9.95.420(3)(a). If the ISRB denies release, it is required to establish a new minimum term under RCW 9.95.011. RCW 9.95.420(3)(a). The ISRB makes findings according to its own rules set out in WAC 381-90-150. Among the factors the ISRB may consider includes, but is not limited to, evidence of an inmate's intent or propensity to engage in sex offenses and actuarial assessments identifying the offender's risk to sexually reoffend. WAC 381-90-150. "The ISRB's highest priority is public safety." *Dyer* III, 175 Wn.2d at 190.

# I. DUE PROCESS

Walters argues that his due process rights were violated when the ISRB relied on evidence of acquitted conduct. We disagree.

We review constitutional challenges de novo. *In re Pers. Restraint of Troupe*, 4 Wn. App. 2d 715, 721, 423 P.3d 878 (2018). The due process clause of the Fourteenth Amendment states that the State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; WASH CONST. art. I, § 3. This amendment requires that state action be implemented in a fundamentally fair manner. *State v. Beaver*, 184 Wn.2d 321, 332, 358 P.3d 385 (2015).

## A.    *Procedural Due Process Rights Not Violated*

Walters argues that the ISRB violated his procedural due process rights by relying in part on acquitted conduct in making its determination.[5] We disagree.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). However, the United States Supreme Court has determined that state statutes may confer a liberty interest where one did not previously exist. *Greenholtz*, 442 U.S. at 12.

RCW 9.95.420(3)(a) states that the ISRB "*shall* order the offender released . . . unless the [ISRB] determines by *a preponderance of the evidence* that, despite such conditions, it is more

---

[5] Walters argues that "the ISRB treated this acquitted conduct as having been conclusively established as its starting point, without a hearing, without the presentation of evidence, and without providing Walters notice and an opportunity to present evidence to prove otherwise." Pet. at 11.

likely than not that the offender will commit sex offenses if released." (Emphasis added). In *In re Personal Restraint of McCarthy*, our Supreme Court held that this mandatory language "creates a *limited liberty interest* by restricting the [ISRB]'s discretion and establishing a presumption that offenders will be released to community custody upon the expiration of their minimum sentence." 161 Wn.2d 234, 241, 164 P.3d 1283 (2007) (emphasis added).

In *McCarthy*, our Supreme Court examined .420 hearing procedures to determine whether due process required legal counsel for offenders during .420 hearings. 161 Wn.2d at 237. The *McCarthy* court held that offenders' due process protections in a .420 hearing do not include the right to counsel. 161 Wn.2d at 237. The court explained that offenders before a .420 hearing are entitled to *minimum* procedural protections, including the opportunity to be heard and an explanation for why release was denied. *In re McCarthy*, 161 Wn.2d at 242-45. Analogizing release under RCW 9.95.420 to parole, the court noted that parole release statutes do not require formal, adversarial hearings. *In re McCarthy*, 161 Wn.2d at 242. A review of the "inmate's file, together with the inmate's opportunities to appear before the [ISRB], 'adequately safeguards against serious risks of error and thus satisfies due process.'" *In re McCarthy*, 161 Wn.2d at 242 (quoting *Greenholtz*, 442 U.S. at 15).

Here, the ISRB followed the appropriate procedure necessary to meet the minimum procedural protections that attach under the statute. The ISRB conducted a hearing. The ISRB accorded Walters an opportunity to be heard and Walters provided a statement. The ISRB relied on Walters's file, which included, among other things, the ESRC file and the ESRC's notes on Walters's acquitted conduct. The ISRB then informed Walters of its decision in writing, explaining its reasoning for denying release.

Walters cites to no case on point in his contention. He relies on one sentence from a New Hampshire Supreme Court case, which notes "the presumption of innocence is as much ensconced in our due process as the right to counsel." *State v. Cote*, 129 N.H. 358, 375, 530 A.2d 775 (1987). Walters's reliance on this authority is misplaced.

In *Cote*, the New Hampshire Supreme Court held that a *sentencing court's* reliance on acquitted conduct to enhance a sentence violated due process. *Cote*, 129 N.H. at 375. However, that same court subsequently held that evidence of acquitted conduct may be properly considered when reimposing a suspended sentence. *State v. Gibbs*, 157 N.H. 538, 540-42, 953 A.2d 439 (2008). The *Gibbs* court noted that "unlike in *Cote*, the trial court here did not consider the defendant's acquitted conduct for a punitive purpose, but, rather, to make an independent judgment regarding the defendant's compliance with the conditions of his suspended sentence." *Gibbs*, 157 N.H. at 540.

The *Gibbs* court went on to describe that the imposition of a suspended sentence was remedial, not punitive. 157 N.H. at 541. Multiple jurisdictions are in accord on the principle that revocation of parole is remedial, not punitive. *See Peyton v. Commonwealth*, 268 Va. 503, 604 S.E.2d 17 (Virginia, 2004); *Standlee v. Rhay*, 557 F.2d 1303, 1306 (9th Cir., 1977); *see also United States v. Brown*, 59 F.3d 102, 104-05 (9th Cir., 1995); *United States ex rel. Carrasquillo v. Thomas*, 527 F. Supp. 1105, 1110 (S.D.N.Y., 1981), *aff'd* 677 F.2d 225 (2d Cir., 1982). Similarly, other jurisdictions have recognized such minimal liberty interests exist in *parole or probation revocation*, as in *Gibbs*'s revocation of suspended sentence. *See Brennan v. Cunningham*, 126 N.H. 600, 604, 493 A.2d 1213 (1985) (noting similar conditional liberty interests associated with suspension of sentence, parole, and probation); *People v. Scura*, 72 P.3d

431, 434 (Colo. App., 2003). Indeed, our own Supreme Court has held that acquitted conduct may be relied on in parole revocation without offending the doctrine of collateral estoppel or impinging on due process. *Standlee v Smith*, 83 Wn.2d 405, 409-410, 518 P.2d 721 (1974).

These cases are especially instructive when comparing the liberty interests they determined to attach in parole *revocation* with our Supreme Court's holding in *McCarthy*. In *McCarthy*, the court analogized a .420 hearing resulting in release to parole. The *McCarthy* court explained:

> The .420 hearings are more analogous to parole *release* than to parole *revocation*. The *liberty interest* at stake for an offender facing *revocation* of parole *is more significant* because the offender has already been released from incarceration. Offenders in .420 hearings face continued incarceration. . . .
>
> . . . .
>
> The unique statutory language and structure of RCW 9.95.420 give offenders only a limited liberty interest in .420 hearings—an interest *more limited* than the interest at stake during parole revocation decisions.

161 Wn.2d at 243-45 (some emphasis added).

The ISRB accorded Walters the minimum procedural protections as laid out in *McCarthy*. The use of acquitted conduct in parole revocation hearings does not offend procedural due process. The liberty interest that attaches in a .420 hearing is *more limited* than that in parole revocation. As a result, we hold that the ISRB's reliance on acquitted conduct did not violate procedural due process.

Walters argues that the ISRB treated acquitted conduct as conclusively proven, and this also violated his due process rights. He argues that before the ISRB can consider acquitted conduct, it has to first establish that the accusation was been proven by a preponderance of evidence. We disagree.

Walters bases his argument on *United States v. Watts*, 519 U.S. 148, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997). There, the United States Supreme Court held that a jury's acquittal on certain charges does not prevent a sentencing court from considering the underlying charge, so long as it was proved by a preponderance of the evidence to the sentencing court. *Watts*, 519 U.S. at 157. The court reached this decision under the Double Jeopardy Clause of the Fifth Amendment and did not reach a Fourteenth Amendment question. *Watts*, 519 U.S. at 156-57. But *Watts* did lay out several tenets instructive here, notably that "the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty" and that an "'acquittal in a criminal case does not preclude the Government from relitigating the issue when it is presented in a subsequent action governed by a lower standard of proof.'" 519 U.S. at 155-56 (quoting *Dowling v. United States*, 493 U.S. 342, 349, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990)).

Instructive here is *Standlee v. Smith*, where our Supreme Court held that acquitted conduct may be relied on in parole revocation without offending the doctrine of collateral estoppel. 83 Wn.2d at 409-410. There the court noted that "[t]he difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of [r]es judicata. The acquittal was 'merely . . . an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.'" *Standlee*, 83 Wn.2d at 408 (quoting *Lewis v. Frick*, 233 U.S. 291, 302, 34 S. Ct. 488, 58 L. Ed. 967 (1914)). The *Standlee* court recognized that the United States Supreme Court had "establish[ed] that certain minimum requirements of due process apply to revocation hearings." *Standlee*, 83 Wn.2d at 409 (citing *Morrisey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S.

778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)). However, the court did "not read those decisions as prohibiting the result we reach [in *Standlee*]. Both cases [*Morrisey* and *Gagnon*] emphasize the *limited* rights accorded the parole or probation violator." *Standlee*, 83 Wn.2d at 409-10 (emphasis added). As discussed above, the rights of an offender before a .420 hearing are even more limited. *See In re McCarthy*, 161 Wn.2d at 243-45.

During a .420 hearing, the ISRB must rely on the ESRC report. *See* WAC 381-90-050(1)-(2). The ESRC report

> may include, but *is not limited to* . . . psychiatric or psychological reports, such as IQ appraisals, personality inventories, actuarial risk assessments and sexual history polygraphs; . . . [b]ehavioral details of the crimes of conviction, . . . [and] [t]he department's risk management level and the sex offender notification level. . . .

WAC 381-91-050(2) (emphasis added). Offenders have an opportunity to review the ESRC information and have the opportunity to make a written statement. WAC 381-90-050(3). Offenders have the right to submit to the ISRB letters or statements in support of release and to review the ESRC report and supporting documents prior to the ISRB hearing. WAC 381-90-090 (2)-(3).

At the hearing, the ISRB reviews the evidence and predicts the probability that the offender will sexually reoffend if released. RCW 9.92.420(1)(a); WAC 381-90-100, -150.

> A list of factors that the [ISRB] may consider includes, but is not limited to:
> . . . .
>   . . . [e]vidence of an inmate's continuing intent or propensity to engage in sex offenses .
>   . . . [and] [e]nd of sentence review determination based on actuarial assessments identifying risk to sexually reoffend.

WAC 381-80-150. During the hearing, "[t]he [ISRB] will accept written information pertaining to the inmate from any interested person." WAC 381-90-100. The ISRB may also consider

"[o]ther pertinent information." WAC 381-90-050(4)(d). "All relevant information shall be admissible." WAC 381-90-140.

Here, the ISRB conducted the hearing in accordance with these rules. Written information on Walters's acquitted conduct was contained in the ESRC report that the ISRB relied on. The information there shows that the victim in the 1983 crime was Walters's friend's younger sister. Walters's friend had told Walters that the victim would be home from school that day. The assailant was a white teen male, as was Walters. Walters also had access to the victim's house because he knew where the key was and had used it to access the house to pick up his friend on the morning of the attack. The victim's family also had two dogs, which did not react to the intruder. A state crime lab examined semen recovered from the victim and determined Walters had the same blood type as the assailant. Walters's polygraph results noted deceptive responses.

Moreover, Walters had notice that this information was in his file because it appeared there in previous .420 hearings. Walters was allowed to testify at the hearing. When questioned about the 1983 charges, Walters denied any involvement. Based on the information the ISRB may consider under its rules and the description of the 1983 charges laid out in the ESRC report, it was possible for the ISRB to conclude that it was more likely than not that Walters committed the 1983 crime. Accordingly, we hold that Walters's procedural due process rights were not violated.

Furthermore, the jury did not "necessarily reject" the facts of the 1983 crimes Walters was charged with. *Watts*, 519 U.S. at 155; Ex. 3 at 3-4. The due process protections that the United States Supreme Court held attach at revocation hearings did not prevent the *Standlee*

court from allowing acquitted conduct to be relied on in parole revocations. As a result, the more limited rights offenders are permitted under .420 hearings as established by *McCarthy* do not preclude such a decision here either. Accordingly, we hold that in a .420 hearing the ISRB is not precluded by due process from revisiting facts from an acquittal when the burden of proof is lower than beyond a reasonable doubt.[6]

## II. ABUSE OF DISCRETION

Walters argues in the alternative that the ISRB abused its discretion when it denied his release. Walters argues that the ISRB abused its discretion when it relied on insufficient evidence and improperly relied on evidence of acquitted conduct. We disagree.

### A. *Legal Principles*

We review ISRB decisions denying release and setting a new minimum term for an abuse of discretion. *Dyer* III, 175 Wn.2d at 196. We give the ISRB decision substantial deference, as we are "not a super ISRB and will not interfere with an ISRB determination . . . unless the ISRB is first shown to have abused its discretion . . . . [T]he courts will not substitute their discretion for that of the ISRB." *Dyer* III, 175 Wn.2d at 196 (quoting *In re Pers. Restraint of Whitesel*, 111 Wn.2d 621, 628, 763 P.2d 199 (1988)). "The ISRB abuses its discretion when it fails to follow its own procedural rules for parolability hearings or acts without consideration of and in disregard of the facts." *In re Pers. Restraint of Dyer*, 157 Wn.2d 358, 363, 139 P.3d 320 (2006) (*Dyer* I). The petitioner has the burden to prove the ISRB abused its discretion. *In re Pers. Restraint of Addleman*, 151 Wn.2d 769, 776, 92 P.3d 221 (2004).

---

[6] At oral argument, Walters argued that the form of the evidence, contained within a report from the Pierce County prosecutor, being allegations only on paper violated Walters's due process. But the ISRB considered evidence consistent with its rules.

RCW 9.95.420(3)(a) states that the ISRB shall

determine whether it is more likely than not that the offender will engage in sex offenses if released on conditions to be set by the [ISRB]. . . . The [ISRB] shall order the offender released, under such affirmative and other conditions as the [ISRB] determines appropriate, unless the [ISRB] determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the offender will commit sex offenses if released.

In making its determination, the ISRB must rely on the ESRC report. *See* WAC 381-90-050(1)-(2). The ESRC report

may include, but *is not limited to* . . . psychiatric or psychological reports, such as IQ appraisals, personality inventories, actuarial risk assessments and sexual history polygraphs; . . . [b]ehavioral details of the crimes of conviction, . . . [and] [t]he department's risk management level and the sex offender notification level. . . .

WAC 381-91-050(2) (emphasis added). "The [ESRC] shall classify as risk level III those offenders whose risk assessments indicate they are at a high risk to sexually reoffend within the community at large." RCW 72.09.345(6).

Additionally:

A list of factors that the [ISRB] may consider includes, but is not limited to:
. . . [e]vidence of an inmate's continuing intent or propensity to engage in sex offenses . . . .
. . . [and] [e]nd of sentence review determination based on actuarial assessments identifying risk to sexually reoffend.

WAC 381-90-150 (emphasis added). The ISRB may also consider "[o]ther pertinent information." WAC 381-90-050(4)(d). "All relevant information shall be admissible." WAC 381-90-140.

B.    *The ISRB's Decision Was Supported by Sufficient Evidence*

Walters argues that the ISRB's determination was not supported by the evidence. We disagree.

"The [ISRB] shall order the offender released . . . unless the [ISRB] determines by a preponderance of the evidence that . . . it is more likely than not that the offender will commit sex offenses if released." RCW 9.95.420(3)(a). Preponderance of the evidence means evidence to support that something is probably more true than not true. *In re Pers. Restraint of Pugh*, 7 Wn. App. 2d 412, 422, 433 P.3d 872 (2019). The ISRB abuses its discretion when it acts without consideration of and in disregard of the facts. *Dyer* I, 157 Wn.2d 358 at 363.

The ISRB cannot hold a .420 hearing until it has received the ESRC report. WAC 381-90-050(1)(a). At the .420 hearing the ESRC report is admissible, including ESRC risk assessment and sex offender notification level. RCW 381-90-050(2)(f). The ISRB may consider the ESRC's report on psychiatric or psychological reports, and sexual history polygraphs. WAC 381-90-050(2)(c). Additionally, all relevant evidence is admissible, and the ISRB may consider, among other things, the offender's serious and repetitive disciplinary infractions, continuing intent or propensity to engage in sex offenses, and ESRC determinations identifying risk. WAC 381-90-140, 381-90-150.

The ISRB held Walters's 2017 .420 hearing after receiving an update from the ESRC regarding the report on Walters. The ESRC report contained information on a past rape charge for which Walters was acquitted and the results of a polygraph in the wake of that charge in which Walters displayed deception. The report also noted that Walters was referred to the SVP subcommittee for psychological examination to determine if he met the requirements for civil commitment. The ISRB relied on a variety of evidence in making its decision, including the ESRC report, which included the history of charges provided in the ESRC file, as well as Walters's ISRB file, information from the DOC, information from institutional behavior

programming, and the testimony of Walters and his counselors. The updated 2017 ESRC letter to the ISRB noted that Walters's actuarial assessments, although still low and low/moderate, were raised because of Walters's possession of a weapon. The ESRC maintained Walters as a Level III risk.

In its decision and reasons, the ISRB noted Walters's Level III assessment and referred to the ESRC report. The ISRB also considered that the ESRC had referred Walters to the SVP subcommittee. Relying on Walters's testimony and that of his counselors, the ISRB expressed concern over the changing details of Walters's depiction of events.[7] The ISRB noted some progress that Walters had made, but found his explanations regarding his motivation not credible, given the sexual elements of his crime. The ISRB also stated its concern that Walters's prior charge had similar characteristics to his crime.

Walters relies on *In re Pers. Restraint of Brashear* in his argument that the ISRB did not rely on relevant evidence. 6 Wn. App. 2d 279, 430 P.3d 710 (2018). *Brashear* was a juvenile board case where the ISRB denied release to the petitioner, who had been convicted of a roadside murder as a juvenile and sentenced to 614 months.[8] 6 Wn. App. 2d at 281-85. In

---

[7] The ISRB also requires "full candor" during SOTAP. *See In re Pers. Restraint of Dyer*, 164 Wn.2d 274, 283, 189 P.3d 759, 770 (2008) (*Dyer* II). Walters's statements to the ISRB, and his counselor's surprise regarding conflicting information over Walters's premeditation and motivation could have suggested a lack of candor to the ISRB.

[8] Brashear's PRP came in the wake of the United States Supreme Court decision in *Miller v. Alabama*, where the Court held that a mandatory life sentence without parole for those under 18 violated the Eighth Amendment to the United States Constitution. 567 U.S. 460, 465, 132 S. Ct. 2455 183 L. Ed. 2d 407 (2012). As a result, our legislature enacted a "*Miller* fix" to allow those convicted as juveniles the ability to petition the ISRB for early release. *Brashear* 6 Wn. App. 2d at 281-82. At the time of her PRP, Brashear had served 20 years. *Brashear* 6 Wn. App. 2d at 281.

*Brashear*, Division One of this court reversed the ISRB decision, holding that the ISRB abused its discretion. 6 Wn. App. 2d at 289-90. Division One noted that the ISRB focused on the severity of Brashear's underlying crimes, rather than fulfilling its statutory mandate to consider whether Brashear was more likely than not to reoffend. 6 Wn. App. 2d at 289.

Walters's case is distinguishable. Here, the ISRB clearly focused on its statutory mandate to consider whether Walters was more likely than not to reoffend. Walters had no record of marked improvement over his years of confinement; he showed limited insight into his crime, he committed an infraction in prison, he was classified as a Level III offender, and he was referred to be evaluated as an SVP.

Because of the amount and type of evidence the ISRB relied on, and giving deference to the ISRB's decision, there was sufficient evidence to support the ISRB's determination based on a preponderance of the evidence standard. Accordingly, we hold that sufficient evidence supports its decision.

C.      *The ISRB Did Not Abuse its Discretion When It Relied on Evidence of Acquitted Conduct*

Walters argues that the ISRB abused its discretion when it based its decision in part on Walters's past acquitted charges. Walters contends that the ISRB's use of acquitted conduct was an abuse of discretion because it violated Walters's due process rights. As discussed above, this argument fails.

CONCLUSION

Walters has only a limited liberty interest in a .420 hearing—much more limited than in either sentencing or even parole revocation. As a result, his due process rights were not violated by the ISRB's consideration of acquitted conduct. The ISRB also did not abuse its discretion in

19

No. 54062-2-II

denying Walters release, because it relied on sufficient evidence and the evidence of acquitted conduct does not violate due process. Accordingly, we deny Walters's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

Melnick, J.

Glasgow, J.