# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT OF:<br><br>JAMES DAY,<br><br>                 Petitioner. | No. 85705-3-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

FELDMAN, J. — James Day filed this personal restraint petition (PRP) challenging a 2023 decision of the Indeterminate Sentence Review Board (ISRB) concluding he is not releasable under RCW 9.95.420 and extending his minimum term of confinement. We agree with Day that the ISRB failed to meaningfully consider the statutory presumption of release and whether conditions of release could reduce his risk to an acceptable level. To remedy this error, we grant Day's petition and remand to the ISRB to conduct a new release hearing that complies with applicable law as set forth in this opinion.

I

In 2010, when Day was 24 years old, he pleaded guilty to two counts of child molestation in the first degree (counts 1 and 2) and one count of communication with a minor for immoral purposes (count 3). The sentencing court imposed indeterminate sentences of 89 months to life on counts 1 and 2 and a

determinate sentence of 12 months on count 3, all to be served concurrently with each other. In March 2016, while incarcerated, Day enrolled in the Sex Offense Treatment and Assessment Program (SOTAP). During his treatment, Day revealed that between the ages of 12 and 22 he had committed sex offenses against an estimated "50-100 un-adjudicated . . . victims," all of whom were minors. Additionally, Day divulged that he watched child pornography on nearly a daily basis during this time period.

For offenders like Day who have received indeterminate sentences under RCW 9.94A.507, the ISRB must conduct a hearing shortly before the minimum term expires to determine "whether it is more likely than not that the offender will engage in sex offenses if released on conditions [of community custody] to be set by the board." RCW 9.95.420(3). Following the hearing, the ISRB "shall order the offender released, under such affirmative and other conditions as the [ISRB] determines appropriate, unless the [ISRB] determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the offender will commit sex offenses if released." *Id.* If the ISRB does not release the offender, it "shall establish a new minimum term." *Id.* The ISRB conducted two such release hearings for Day in 2017 and 2019, and following each hearing the ISRB issued decisions declining to release Day and extending his minimum term after finding he was "more likely than not to commit a sex offense if released on conditions."

Meanwhile, the End of Sentence Review Committee (ESRC) recommended that the ISRB refer Day for a forensic psychological evaluation (FPE) "to assess

2

whether he meets civil commitment criteria as defined under RCW 71.09.020 prior to finding the offender eligible for release."[1]  In September 2020, the King County Prosecutor's Office arranged for a psychologist, Dr. Craig N. Teofilo, to conduct this evaluation to determine "whether [Day] meets [the] criteria as a Sexually Violent Predator (SVP) per Chapter 71.09 RCW."  Dr. Teofilo interviewed Day, reviewed records regarding Day's criminal history and sex offense treatments, and utilized various actuarial risk assessments to evaluate Day's risk of recidivism.

In his evaluation, Dr. Teofilo diagnosed Day with pedophilic disorder, non-exclusive type, and "[o]ther specified personality disorder – with mixed personality features."  Dr. Teofilo observed that the actuarial risk assessments generally classified Day as an above average risk of sexual reoffending and that these assessments likely underestimate Day's risk of reoffending.  Dr. Teofilo also expressed concern that Day "has not adequately internalized [sex offender] treatment."  Ultimately, Dr. Teofilo concluded that "it is my professional opinion that Mr. Day **does meet** the criteria as a sexually violent predator as described in Chapter 71.09 RCW" because he had committed a "crime of sexual violence" and "by reason of his mental abnormality or personality disorder . . . is likely to engage in predatory acts of sexual violence if not confined in a secure facility."

In January 2021, Day appeared for his third release hearing.  Following the hearing, the ISRB issued a decision (the 2021 Decision) declining to release Day

---

[1] RCW 71.09.020(19) defines a "sexually violent predator" as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."

and adding 48 months to his minimum term after finding "by a preponderance of the evidence that Mr. Day is more likely than not to commit a sex offense if released on conditions." The ISRB listed four reasons why Day "is not releasable": (1) the "[r]esults of the Forensic Psychological Evaluation . . . indicate that Mr. Day meets the criteria for consideration of Civil Commitment according to RCW 71.09," (2) Day "scored high/moderate on the Static-99R" actuarial risk assessment and was classified by the ESRC as a level III risk of sexual reoffense in the community under RCW 72.09.345, (3) according to Dr. Teofilo's report, "'Mr. Day uses distorted and intellectualized thinking to deny the presence of risk factors'" and "'[h]is inability to acknowledge even a minor amount of planning suggests a lack of understanding,'" and (4) "[c]ommunity supervision conditions would not be adequate to mitigate his risk to reoffend" because Day has a "history of overestimating his ability to refrain from offending behaviors" given his prior inability to stop viewing child pornography.

In January 2023, Day filed a Personal Restraint Petition (PRP) in our court challenging the 2021 Decision. Relevant here, Day argued the ISRB failed to "actually consider[] release conditions, or the likelihood that Day would follow such conditions." In response, the ISRB conceded its decision did not comply with our Supreme Court's recent opinion in *In re Personal Restraint of Dodge*, 198 Wn.2d 826, 844, 502 P.3d 349 (2022), because it "does not make it apparent 'that the ISRB meaningfully considered . . . whether any conditions of release would sufficiently mitigate [Day's] risk level.'" Because the ISRB had already scheduled

4

a new release hearing to remedy the error, which would afford Day the relief to which he was entitled to under *Dodge*, the ISRB asked our court to dismiss Day's petition as moot. The acting chief judge accepted the ISRB's concession and dismissed Day's PRP as moot in light of the newly scheduled release hearing. *See* Order of Dismissal entered Aug. 28, 2023 under Case No. 84881-0-I.

In June 2023, the ISRB held Day's fourth release hearing. Following this hearing, the Board issued a decision (the 2023 Decision) declining to release Day and adding 18 months to his minimum term because "[a]fter considering the possible conditions of release and the remaining evidence, the Board finds James Day is more likely than not to commit sex offenses if released, despite such conditions." Among the evidence unfavorable to release, the ISRB considered Dr. Teofilo's conclusion that Day "meets criteria as a Sexually Violent Predator." Regarding conditions of release, the 2023 Decision states the ISRB "has considered all potential conditions of community custody it may lawfully impose, including all potential conditions identified by the [ESRC], [Department of Corrections (DOC)] psychological evaluations, and RCW 9.94A.704." The decision then lists 8 such conditions, including electronic monitoring, geographic restrictions, mental health treatment compliance, and participation in sex offender treatment. In explaining why community custody conditions would not sufficiently reduce Day's likelihood of committing new sex offenses, the 2023 Decision cites to the conclusion in Dr. Teofilo's evaluation that "Day meets criteria as a Sexually Violent Predator" under chapter 71.09 RCW and, thus, is "likely to engage in

5

predatory acts of sexual violence if not confined to a secure facility." The ISRB ultimately concluded Day's "risk is too great for him to attempt to acquire risk mitigating tools in treatment while being in the community."

In response to the 2023 Decision, Day filed a new PRP repeating many of his prior arguments regarding the 2021 Decision. The acting chief judge has since determined the PRP is not frivolous and has referred it to a panel of the court for determination on the merits.

II

Day argues the 2023 Decision "contains flaws just as fatal as those" in the 2021 Decision because "the ISRB did nothing more than repeat the platitude that it considered 'all possible conditions.'" We agree.

A

To succeed on a PRP challenge to an ISRB decision, a petitioner must show they are under unlawful restraint. RAP 16.4; *Dodge*, 198 Wn.2d at 836. We review release decisions "'to ensure the ISRB exercises its discretion in accordance with the applicable statutes and rules.'" *Dodge*, 198 Wn.2d at 837 (quoting *In re Pers. Restraint of Dyer*, 157 Wn.2d 358, 363, 139 P.3d 320 (2006)). Although the ISRB has broad discretion, it "must comply with state and federal law" in making release decisions. *In re Pers. Restraint of Parejo*, 5 Wn. App. 2d 558, 571, 428 P.3d 130 (2018). The ISRB abuses its discretion if it "bases its decision on 'an erroneous view of the law,' or when it 'acts without consideration of and in disregard of the facts.'" *Dodge*, 198 Wn.2d at 837 (quoting *Dyer*, 157 Wn.2d at

363). The ISRB also abuses its discretion where it "supports its decision with speculation and conjecture." *Dyer*, 157 Wn.2d at 369.

In *Dodge*, our Supreme Court analyzed a similar situation involving an ISRB release decision. In that case, Dodge petitioned for early release pursuant to RCW 9.94A.730, which allows persons convicted of crimes committed prior to their eighteenth birthday to "petition the [ISRB] for early release after serving no less than twenty years of total confinement." 198 Wn.2d at 830-31 (quoting RCW 9.94A.730(1)). The statute further provides that the ISRB "'shall order the person released under such affirmative and other conditions as the board determines appropriate, unless the board determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the person will commit new criminal law violations if released.'" *Id.* at 829 (quoting RCW 9.94A.730(3)).

The ISRB denied Dodge's petition. *Id.* at 842. He then filed a PRP arguing the ISRB abused its discretion by failing to apply the statute's presumption of release and address any release conditions that might reduce his risk of reoffense. *Id.* The Supreme Court agreed with Dodge, observing that the ISRB's decision disregarded the statutory presumption of release and "fail[ed] to meaningfully address *any* recommended potential conditions of release." *Id.* at 842-43. Instead, the ISRB's decision stated it "found Dodge more likely than not to reoffend if released with conditions that are designed to help better prepare him for a successful re-entry into society." *Id.* at 843 (internal quotation marks omitted). The court held, "Compliance with the statutory presumption of release requires more

7

than that conclusory statement." *Id.* To remedy the deficiency, the court remanded for a new release hearing. *Id.* at 845.

Here, as the ISRB has acknowledged, the court's analysis in *Dodge* regarding RCW 9.94A.730 is instructive in interpreting RCW 9.95.420—the statute governing Day's releasability—given the similarity of the statutes. Both statutes contain a presumption of release and require the ISRB to release the offender under "appropriate" "affirmative and other conditions" unless it finds by a preponderance of the evidence that "despite such conditions" the offender is more likely than not to reoffend. RCW 9.94A.730(3); RCW 9.95.420(3). Thus, RCW 9.95.420, like RCW 9.94A.730, "place[s] a limit on the ISRB's discretion" in making release decisions. *Dodge*, 198 Wn.2d at 844; *see also In re Pers. Restraint of McCarthy*, 161 Wn.2d 234, 239-40, 241, 164 P.3d 1283 (2007) ("RCW 9.95.420(3) creates a limited liberty interest by restricting the Board's discretion and establishing a presumption that offenders will be released to community custody upon the expiration of their minimum sentence."). We therefore conclude that *Dodge* governs our analysis here and, applying *Dodge*, determine whether the ISRB abused its discretion in declining to release Day.

The 2023 Decision does not comply with *Dodge* because the record does not reflect that the ISRB "meaningfully consider[ed] appropriate release conditions that could lower the petitioner's risk of reoffense to an acceptable level." *See id.* at 840. The ISRB previously conceded the 2021 Decision did not satisfy this requirement and asserted it would remedy this deficiency by issuing a new

decision that complied with *Dodge*. But the ISRB's 2023 Decision does not materially differ from its flawed predecessor; it similarly states in conclusory fashion that conditions of release could not sufficiently mitigate Day's risk level because "[h]is risk is too great for him to attempt to acquire risk mitigating tools in treatment while being in the community." Although the new decision lists eight "potential conditions of community custody [the ISRB] may lawfully impose" if Day is released, it does not further discuss any of these potential conditions in any detail before concluding they "would not sufficiently reduce the likelihood of James Day committing new sex offenses." In other words, the ISRB did not discuss *why* electronic monitoring, geographic restrictions, mental health treatment compliance, participation in sex offender treatment in a community setting, or other proposed release conditions could not reduce Day's risk to an appropriate level.

While the *Dodge* court clarified that the ISRB is not required "to specifically list *any and all* potential conditions it might set," the court nonetheless held that the ISRB must develop a record demonstrating it "meaningfully considered the presumption of release or whether any conditions of release would sufficiently mitigate [the offender's] risk level." 198 Wn.2d at 843-44. Here, despite Day and his counsel proposing potential release conditions at the 2023 release hearing,[2]

---

[2] In his opening remarks, Day's attorney told the ISRB that the purpose of the hearing on remand from Day's original PRP was "for the board to be able to use the Dodge criteria for looking at conditions that would make Mr. Day safe in the community." And before the hearing, Day submitted a release plan listing various potential release conditions the ISRB could impose, such as geographic restrictions, restrictions on internet and social media use, prohibitions on contacting minors, "ankle monitor[ing]," polygraph testing, participation in sex offender treatment such as SOTAP's Aftercare program, and maintaining contact with his therapist and supervising community

the ISRB's written decision is devoid of any discussion of potential release conditions apart from a conclusory statement that no combination of the eight listed conditions "would . . . sufficiently reduce the likelihood of James Day committing new sex offenses." *Dodge* requires more than *ipse dixit*, and this court cannot simply take the ISRB's word for it. Because we cannot conclude from this record that the ISRB meaningfully considered whether any conditions of release would sufficiently mitigate Day's risk level, we agree with Day that the 2023 Decision is no better than the ISRB's admittedly deficient 2021 Decision.

B

Rather than explain why the identified conditions of release could not reduce Day's risk to an acceptable level, the 2023 Decision—like the 2021 Decision—reasons Day is not releasable on any conditions because Dr. Teofilo opined in his 2020 evaluation that Day meets the legal definition of an SVP under RCW 71.09.020(19), in that his mental abnormality and personality disorder "made Mr. Day likely to engage in predatory acts of sexual violence if not confined to a secure facility." The ISRB reiterates this position in its appellate briefing, arguing that "the FPE's conclusion that Day meets the SVP criteria is a critical piece of evidence that weighs heavily against Day's conditional release because it establishes that no amount, or configuration, of conditions can mitigate his risk to a level that is acceptable under RCW 9.95.420."

---

corrections officer. Day then testified at the hearing that this plan "outlined community custody conditions that will limit my opportunity to even offend."

The ISRB's reliance on Dr. Teofilo's evaluation is fundamentally flawed for two reasons. First, the ISRB presumes Day is an SVP even though the State has not complied with the statutory requirements to make that determination. To involuntarily commit a person under the SVP statute, chapter 71.09 RCW, the State must first file a petition alleging the person meets the legal definition of an SVP under RCW 71.09.020(19) in that they are a "person convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.030. If the State files such a petition, the person "enjoys a panoply of procedural protections," such as a judicial determination of whether probable cause exists to believe the person is an SVP, representation of counsel (including appointed counsel for indigent persons), an independent expert evaluation "on the person's behalf" (akin to Dr. Teofilo's evaluation of Day), and a speedy trial at which the State bears the burden of proving the merits of its petition. *State v. McCuistion*, 174 Wn.2d 369, 379, 275 P.3d 1092 (2012); RCW 71.09.040-.060. At the conclusion of this trial, a judge or unanimous jury must determine "whether, beyond a reasonable doubt, the person is a sexually violent predator" as defined in RCW 71.09.020(19). RCW 71.09.060.[3]

---

[3] In this sense, the procedural guarantees afforded to persons subjected to civil commitment proceedings under the SVP statute are greater than those afforded to offenders seeking release under RCW 9.95.420 in that the latter are not entitled to a "formal, adversarial hearing" but, instead, are merely entitled to an "'opportunity to be heard' and an explanation when the Board denies parole." *See McCarthy*, 161 Wn.2d at 241 (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)).

As the ISRB acknowledges, Day has not been adjudicated to be an SVP in accordance with these procedures. We are unaware if the State has filed a petition alleging that he is an SVP under RCW 71.09.030, and Day disputes that he is an SVP. Dr. Teofilo himself even noted in his evaluation that whether Day ultimately meets the definition of an SVP "is a legal determination made by the trier of fact." To the extent the ISRB suggests it can categorically deny release to persons it suspects *would* be adjudicated to be an SVP *if* they were subjected to the civil commitment process outlined in chapter 71.09 RCW without more would obviate its obligation under *Dodge* to "meaningfully consider[] the presumption of release or whether any conditions of release would sufficiently mitigate [the offender's] risk level." 198 Wn.2d at 844. *Dodge* recognizes that the ISRB's consideration of public safety "'does not override the presumption of release'" because "[o]therwise, the presumption of release would have no meaning—because the only way to absolutely guarantee public safety would be to never release anyone." *Id.* at 841-42 (quoting *In re Pers. Restraint of Brooks*, 197 Wn.2d 94, 102, 480 P.3d 399 (2021)).

Second, Dr. Teofilo's evaluation cannot support such a decision here because it is outdated. When Dr. Teofilo evaluated Day in 2020, Day scored 4 points on the Static-99R risk assessment and 5 points on the Static-2002R risk assessment, both of which indicated Day posed an "Above Average" risk of reoffense. But due to Day's increase in age between the 2020 evaluation and the 2023 release hearing, his score on the Static-99R and Static-2002R risk

12

assessments decreased to 3 points (indicating a "low/moderate risk") and 4 points (indicating an "average risk"), respectively. Despite acknowledging that Day's score on one of these risk assessments had decreased since he was interviewed by Dr. Teofilo, the 2023 Decision nonetheless recites both of Day's previous scores on the Static-99R and Static-2002R risk assessments from Dr. Teofilo's evaluation as "[e]vidence of [Day's] continuing intent or propensity to engage in sex offenses." The decision goes on to recite Dr. Teofilo's conclusions regarding whether Day meets the SVP criteria without acknowledging that certain factual data supporting these conclusions are no longer accurate.

Additionally, at the 2023 hearing, Day addressed Dr. Teofilo's concern that he "may not have internalized his sex offender treatment." Day explained that while he previously denied planning his offenses, "I've had to kind of let my ego take that hit of I did plan these offenses and I'm responsible for the result of them . . . . [T]hat's one thing that I've absorbed from having that evaluation." Day also stated that although he was previously hesitant to identify as a pedophile when speaking to Dr. Teofilo, "I need to accept that this is my past and my present and my future, and that comes along with a lifetime of using my interventions. And I am a pedophile, but I'm also a good person who's making decisions that will limit hurting other people upon their release." Dr. Teofilo did not have the opportunity to reassess Day's current thinking with an updated evaluation.

The ISRB argues that despite the decrease in Day's scores on these risk assessments, it may nonetheless rely on Dr. Teofilo's 2020 evaluation in making

13

its release decision under RCW 9.95.420 because "[t]he mere passage of three years . . . did not render Day's FPE obsolete." In support of this argument, the ISRB cites to *In re Det. of Meirhofer*, 182 Wn.2d 632, 639, 343 P.3d 731 (2015), for the proposition that "'passive aging' does not necessarily change a sex offender's recidivism risk." The State's reliance on *Meirhofer* is misplaced because the court in that case was discussing how the legislature amended RCW 71.09.090 to prevent a person who is civilly committed as an SVP from relying on "'a mere advance in age or a change in gender or some other demographic factor after the time of commitment" to obtain a discharge hearing. *Meirhofer*, 182 Wn.2d at 638-39 (quoting LAWS OF 2005, ch. 344, § 1). In contrast, Day—who has not been adjudicated to be an SVP and, thus, is not bound by RCW 71.09.090—is citing his advance in age to contest the accuracy of Dr. Teofilo's opinion that he is an SVP in the first place. Again, the ISRB conflates the criminal release proceedings under RCW 9.95.420 with the civil commitment proceedings under chapter 71.09 RCW. *See In re Det. of Belcher*, 189 Wn.2d 280, 290, 399 P.3d 1179 (2017) ("[C]ivil commitment is different from criminal incarceration.").

The ISRB also suggested at oral argument that it may indefinitely rely on Dr. Teofilo's 2020 evaluation as a means of denying release to Day under RCW 9.95.420 "[u]ntil there is evidence in the record that substantially contradicts it." Wash. Ct. of Appeals oral argument, *In re Pers. Restraint of Day*, No. 85705-3-I (June 12, 2025), at 10 min., 55 sec. to 11 min., 5 sec. (on file with court). This argument is factually untenable because, as explained above, there is evidence in

14

the record substantially contradicting the evaluation's conclusions. And the argument is legally untenable because our legislature has indicated that SVP evaluations should be conducted on an annual basis, which also has not happened here.[4] Given that a person who is being formally committed as an SVP must be reevaluated on an annual basis, it strains credulity for the ISRB to argue that Day—who has never been adjudicated to be an SVP—is not entitled to be reevaluated unless and until he sufficiently contradicts Dr. Teofilo's evaluation.

The ISRB's argument is especially concerning here because the State alone determines when Day is subjected to an SVP evaluation and when to file an SVP petition that would trigger the civil commitment proceedings under chapter 71.09 RCW. As the "agency with jurisdiction" over Day under chapter 71.09 RCW, the ISRB has "the authority to refer [Day] to the prosecuting attorney or attorney general for civil commitment as an SVP." *See Parejo*, 5 Wn. App. 2d at 574-75.[5] Once this referral is made, the State may arrange for a "'mental health evaluation' of a prisoner prior to the commencement of SVP commitment proceedings." *In re Det. of Strand*, 167 Wn.2d 180, 184, 217 P.3d 1159 (2009) (citing RCW 71.09.025(1)(b)(v)). This process occurred here following Day's 2019 release

---

[4] If a person is involuntarily committed as an SVP under chapter 71.09 RCW, the person is entitled to annual review "to ensure that [the person] continues to meet the criteria for confinement," and "[t]he State must provide an evaluation on a yearly basis demonstrating that [the person] continues to meet the definition of an SVP." *McCuistion*, 174 Wn.2d at 379, 386; RCW 71.09.070, .090.

[5] RCW 71.09.025(1)(a)(i) states, "[w]hen it appears that a person may meet the criteria of a sexually violent predator as defined in RCW 71.09.020, the agency with jurisdiction shall refer the person in writing" to the prosecuting attorney or the attorney general prior to "[t]he anticipated release from total confinement of a person who has been convicted of a sexually violent offense." The agency with jurisdiction is the "agency with the authority to direct the release of a person serving a sentence or term of confinement." RCW 71.09.025(3).

hearing; the ISRB "request[ed] a FPE [to] be completed prior to our next hearing [regarding Day's release under RCW 9.95.420]," and the King County Prosecuting Attorney's Office "referred this case to" Dr. Teofilo for an SVP evaluation. Taking the State's argument to its logical conclusion results in a Kafkaesque scenario in which the State could decline to reevaluate Day once it obtains a report opining that he is an SVP (such as Dr. Teofilo's report) and then rely on that report to indefinitely confine Day as a *de facto* SVP under RCW 9.95.420 without affording him an opportunity to contest his SVP designation through the adjudicative process set forth in chapter 71.09 RCW.[6] We cannot condone this approach to releasability under RCW 9.95.420(3).

To be sure, the ISRB is not prohibited from considering psychological evaluations in determining whether to release Day under RCW 9.95.420. *See Dyer*, 157 Wn.2d at 365 (noting the ISRB obtains psychological evaluations and relies on them in making parole decisions); *see also* WAC 381-90-050(1)(a), (2)(c), (4)(e) (stating the ISRB may consider "pertinent information" and must consider the ESRC's report, which may include "[p]sychiatric or psychological reports"). But where the statute governing an offender's eligibility for release presumes the

---

[6] The record here is also concerning because it indicates the ISRB may be relying on Dr. Teofilo's evaluation to indefinitely detain Day even though he meets the release criteria under RCW 9.95.420. At Day's 2019 release hearing, a board member told Day that the ISRB referred him for the SVP evaluation because it was "considering the possibility of release" given that Day had "pretty much so far done everything we've asked you to." But the board member also explained to Day that "if someone meets in an evaluation as a sexually violent predator, it does make it pretty difficult for us to get to less likely to commit a sex offense if released on conditions." A board member also told Day at this hearing that he could not be released before the evaluation was completed, which runs counter to our holding in *Parejo* that a similar parole statute, RCW 9.95.115, "does not prohibit release unless the person is 'subject to' civil commitment as an SVP under the procedures of chapter 71.09 RCW." 5 Wn. App. 2d at 575.

16

offender is releasable on conditions, as does RCW 9.95.420, the ISRB may not circumvent the requirements of *Dodge* by relying on a psychologist's opinion that the offender meets the legal definition of an SVP under RCW 71.09.020(19) and, therefore, must be confined to a secure facility to prevent reoffense.[7] *Dodge* requires the ISRB to meaningfully consider the presumption of release and whether any conditions of release would sufficiently mitigate Day's risk level. 198 Wn.2d at 844. In that respect, the 2023 Decision, like the 2021 Decision before it, is deficient under *Dodge*.

III

In sum, the ISRB abused its discretion by failing to meaningfully consider whether any conditions of release would sufficiently mitigate Day's risk level as required by RCW 9.95.420 and *Dodge*. As such, we grant Day's petition. The remedy for this abuse of discretion is "remand for a new hearing." *Dodge*, 198

---

[7] Our holding is consistent with *In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 734, 741-43, 214 P.3d 141 (2009). In that case, DOC had a policy of categorically denying early release under RCW 9.94A.728 to inmates, like Mattson, who an evaluator had concluded met the criteria for an SVP under RCW 71.09.020(19). *Id.* at 733. The Supreme Court upheld the DOC's denial of release to Mattson because RCW 9.94A.728 did not create a legitimate expectation of release and, instead, granted the DOC wide discretion to create policies governing which inmates were eligible for release. *Id.* at 741-43. But unlike RCW 9.94A.728, which does not contain a presumption of release, RCW 9.95.420 *does* create a legitimate expectation of release and *does not* grant the ISRB discretion to categorically deny release to offenders based on a forensic evaluator's opinion that the offender meets the legal definition of an SVP. *See McCarthy*, 161 Wn.2d at 241 (presumption of release in RCW 9.95.420(3) "restrict[s] the Board's discretion" in making release decisions). Accordingly, if the State believes Day is an SVP, it may file a petition seeking to have him committed to a secure facility under the civil commitment process outlined in chapter 71.09 RCW if and when "it appears that . . . [Day] is about to be released from total confinement" under RCW 9.95.420. See RCW 71.09.030(1)(a).

Wn.2d at 845. In making its new release decision, the ISRB must comply with applicable law as set forth in this opinion.[8]

Granted and remanded.

Feldman, J.

WE CONCUR:

Coburn, J.

---

[8] Given the *Dodge* court's clear directive that remand is the proper remedy here, we reject Day's request that we "recognize a new remedy: remand with orders to release him on conditions." And because our opinion grants the relief to which Day is entitled under *Dodge*, we decline to address the other arguments raised by Day in his PRP and supplemental briefing. *See Clark County v. W. Wash. Growth Mgmt. Hr'gs Review Bd.*, 177 Wn.2d 136, 146-47, 298 P.3d 704 (2013) (appellate courts "retain wide discretion in determining which issues must be addressed in order to properly decide a case on appeal" and "must address only those claims and issues necessary to properly resolving the case as raised on appeal by interested parties").